NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 21, 2009[*]
Decided October 21, 2009

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

No. 09-2305

| | |
|---|---|
| JEANIE M. PELNARSH, *Plaintiff-Appellant* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 07-cv-1302 |
| R.R. DONNELLEY & SONS COMPANY, *Defendant-Appellee*. | Joe Billy McDade, *Judge*. |

**O R D E R**

Jeanie Pelnarsh sued her former employer, R.R. Donnelley & Sons, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, alleging that several supervisors and coworkers subjected her to a sexually hostile work environment and that Donnelley retaliated against her for complaining about it. The district court granted summary judgment for Donnelley on the grounds that Pelnarsh did not have sufficient

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

evidence to establish a retaliation claim, and that she did not timely file an administrative charge of discrimination as to her sexual-harassment claim. Pelnarsh appeals only the dismissal of the sexual-harassment claim. We affirm the judgment.

We construe the following facts in the light most favorable to Pelnarsh. *See Winsley v. Cook County*, 563 F.3d 598, 602 (7th Cir. 2009). Pelnarsh began working at Donnelley's facility in Pontiac, Illinois, in 1999 and remained with the company until she was fired in January 2006. On October 1, 2005, Pelnarsh transferred to Donnelley's facility in Mendota, Illinois. Pelnarsh contends that, during her tenure with the company, male supervisors and coworkers subjected her to constant sexual harassment including physical touching, propositions for sex, and lewd comments about her appearance. After she transferred to Mendota, however, the only unwelcome conduct Pelnarsh endured was a series of haranguing phone calls from Joe Carlberg, her former supervisor in Pontiac. In the calls Carlberg insisted that she continue to work remotely on assignments for him and threatened to make her life miserable if she refused.

When Pelnarsh was terminated in January 2006, Donnelley gave "gross misconduct" as the reason. The company discovered that Pelnarsh had used a company credit card to pay for thousands of dollars of personal expenses. Pelnarsh pleaded guilty to theft in state court and served a 90-day sentence for making these unauthorized purchases. On September 21, 2006, she filed a charge of discrimination with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights; the EEOC issued a right-to-sue letter after the case had been pending for more than 180 days.

Pelnarsh then filed a complaint in district court, and Donnelley moved for summary judgment, asserting as a defense that Pelnarsh had filed her charge of discrimination with the EEOC too late. Pelnarsh opposed the motion, and gave two reasons why she believed that her administrative charge was timely. First, she asserted that she submitted other administrative charges to the EEOC between December 2005 and August 2006, which were well within 300 days of the alleged discriminatory conduct. But Pelnarsh did not offer any evidence that there had been previous charges of discrimination, and the district court concluded that the undisputed evidence established that her only administrative charge was filed with the EEOC on September 21, 2006. Pelnarsh does not contest this conclusion on appeal.

Second, Pelnarsh asserted in response to Donnelley's motion for summary judgment that Carlberg's calls constituted sexual harassment, and that she filed her administrative charge within 300 days of those calls. To support this assertion, Pelnarsh pointed to her deposition testimony where she verified the accuracy of a letter she had written to the administrative investigator. In the letter Pelnarsh explained: "I didn't endure any sexual

harassment while I was at the Mendota plant.  The only harassment that transpired was by Joe Carlberg who constantly called every day."  Pelnarsh described the content of these calls in an unsworn statement accompanying her opposition to summary judgment.  The district court refused to credit this statement and noted that her deposition testimony contradicted her position that the sexual harassment continued after she transferred to Mendota.

On appeal Pelnarsh argues that she identified a material question of fact as to when the alleged sexual harassment ceased, and that the district court erred by refusing to allow a jury to decide if her case was timely.  We review a grant of summary judgment de novo. *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007).

Administrative exhaustion is a prerequisite to filing a lawsuit under Title VII, but the requirement is not jurisdictional. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Volovsek v. Wis. Dep't of Agric., Trade, & Consumer Prot.*, 344 F.3d 680, 687 (7th Cir. 2003). Instead, lack of exhaustion, which is Donnelley's theory in this case, is an affirmative defense on which the company bears the burden of proof.  *See Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007).  Thus, summary judgment was appropriate only if Donnelley established through undisputed evidence that Pelnarsh failed to timely file her charge of discrimination with the EEOC. *See Laouini v. CLM Freight Lines*, Inc., No. 08-3721, 2009 WL 2535818, *2 (7th Cir. Aug. 20, 2009).

Illinois is a deferral state, so Pelnarsh was required to file a charge of discrimination with the EEOC within 300 days of some offending conduct.  *See* 42 U.S.C. § 2000e-5(e)(1); *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999).  Since Pelnarsh complains of a hostile work environment, the 300-day period is measured from the date of the last hostile act even if that act would not, standing alone, give rise to a claim of sexual harassment.  *See Nat'l R.R. Passenger Corp., v. Morgan*, 536 U.S. 101, 115-18 (2002); *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006).  Thus, Pelnarsh's claim must be based on conduct occurring on or after November 26, 2005.  If there is no evidence of hostile conduct after that date, Pelnarsh's claim was untimely. *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 724 (7th Cir. 2004).   The hostile conduct that Pelnarsh allegedly endured occurred in the Pontiac facility, before her transfer to Mendota on October 1, 2005.  To overcome this problem of timing, Pelnarsh insists that the calls she received from Carlberg after her transfer were hostile acts.  Her contention rests on three premises.  First, she argues, the calls were constant and their frequency alone constitutes sexual harassment regardless of content.  Second, she continues, her former supervisor's work-related demands were inappropriate because she no longer worked for him.  And finally, says Pelnarsh, the calls were hostile because Carlberg threatened to "make her life hell" if she did not continue to work for him.

These calls, as Pelnarsh describes them, do not evince sexual harassment and cannot salvage her claim from being dismissed as untimely. The district court recognized that Pelnarsh did not submit admissible evidence concerning the content of these calls, but even if we credit the description in the unsworn statement she submitted at summary judgment, the only reasonable conclusion is that the calls were work related; as Pelnarsh herself explained both in her unsworn statement and her deposition testimony, Carlberg constantly called and made work-related demands on her time. There is no evidence to suggest that these calls were motivated by Pelnarsh's gender, so they do not serve to further her sexual-harassment claim. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-81 (1998). Moreover, even a threat to "make her life hell," if made to persuade her to continue doing Carlberg's work and not because of her gender, cannot be considered sexual harassment since inappropriate conduct inflicted in a gender-neutral fashion is outside the scope of Title VII. *See Berry v. Delta Airlines*, 260 F.3d 803, 808 (7th Cir. 2001). And to the extent that Pelnarsh thinks that any frequent and unwanted calls can constitute harassment under Title VII no matter the content of the calls, her position is frivolous and falls far short of her burden of demonstrating that her workplace was both objectively and subjectively hostile. *See Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005).

Finally, Pelnarsh suggests on appeal that even if her administrative charge was untimely, she should be permitted to go forward with her lawsuit based on the doctrines of equitable tolling and estoppel. But because she failed to raise these doctrines in the district court, they are waived. *See Laouini*, 2009 WL 2535818, at *6; *Grayson v. City of Chicago*, 317 F.3d 745, 751 (7th Cir. 2003). On this record, moreover, neither doctrine is relevant. Estoppel is primarily intended to redress situations where the employer conceals the very fact of discrimination or otherwise tries to prevent the employee from bringing a lawsuit. *See Lucas*, 367 F.3d at 723. Equitable tolling would require Pelnarsh to demonstrate that circumstances outside of her control prevented her from timely filing with the EEOC and that she diligently pursued her claims despite those conditions. *See Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860-61 (7th Cir. 2005). Pelnarsh could not successfully invoke these doctrines because she knew she was being harassed as early as 1999, and she has not identified any circumstance that prevented timely filing.

AFFIRMED.